**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No.: 11-356 (RWR)** |
| | : | |
| **IRFAN DEMIRTAS,** | : | |
| **also known as Nasrullah,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, pursuant to 18 U.S.C. §§ 3142(f)(1)(A), 3142(f)(2)(A) and 3142(f)(2)(B), seeks an Order detaining the defendant pending trial. The defendant, IRFAN DEMIRTAS, also known as Nasrullah, a Turkish national (with dual Turkish-Dutch citizenship), has been charged by federal indictment for providing material support to the Islamic Movement of Uzbekistan ("IMU"), a designated Foreign Terrorist Organization, and other related offenses. During the charged conduct of January 2006 through May 2008, the defendant acted as a fundraiser and recruiter for the IMU. On January 15, 2015, the defendant was arrested in Germany in connection with the pending Indictment in this case. He was subsequently extradited to the United States from Germany. The detention hearing is currently scheduled for September 9, 2015.

There is no condition or combination of conditions that will reasonably assure the defendant's appearance in Court and assure the safety of any person and the community. Indeed, the law presumes – and the defendant cannot rebut – that he should be detained based on the nature

of the pending charge, and an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the inescapable conclusion that detention is appropriate.

## A. **PROCEDURAL HISTORY**

On December 8, 2011, the government charged the defendant in a sealed four-count Indictment with the following offenses: *Count One* – Providing and Attempting and Conspiring to Provide Material Support to Terrorists, in violation of 18 U.S.C. §§ 2339A and 2; Count Two – Providing and Attempting and Conspiring to Provide Material Support and resources to a Designated Terrorist Organization, in violation of 18 U.S.C. §§ 2339B and 2; *Count Three* – Receiving Military-Type Training from a Foreign Terrorist Organization, in violation of 18 U.S.C. §§ 2339D and 2; and *Count Four* – Discharging, Brandishing, Using, Carrying and Possessing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) & (B) and 2. At that time, a warrant was issued for the defendant's arrest.

On January 12, 2015, the defendant was arrested in Germany while transiting through the Düsseldorf Airport. After contesting his extradition, the defendant was extradited from Germany to the United States on July 17, 2015. He was presented to the United States District Court for the District of Columbia for his initial appearance on July 20, 2015. At the initial appearance, and on the government's motion, the Indictment was unsealed. The government also moved for the defendant's pretrial detention, pursuant to 18 U.S.C. § 3142(f). The Court scheduled the detention hearing for July 23, 2015, at which time the Court reset the detention hearing to its currently scheduled date of September 9, 2015. An immigration detainer has been issued for the defendant by the Department of Homeland Security.

Pretrial detention is warranted in this case since it involves: (1) a crimes of violence and offenses listed in 18 U.S.C. § 2332b(g)(5)(B) (see 18 U.S.C. § 3142(f)(1)(A));[1] (2) a serious risk that the defendant will flee (see 18 U.S.C. § 3142(f)(2)(A)); and (3) a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror (see 18 U.S.C. § 3142(f)(2)(B)).

## B. APPLICABLE LAW

The Bail Reform Act of 1984, 18 U.S.C. § 3141, et seq., provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). See also United States v. Smith, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (a judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence); United States v. Henry, 935 F. Supp. 24, 25 (D.D.C. 1996) ("If a defendant poses a danger to society, the Court has sufficient basis upon which to order pretrial detention.") (citation omitted). The Bail Reform Act also provides for pretrial detention where a judicial officer finds by a preponderance of the evidence that there are no conditions of release that will reasonably assure the defendant's appearance. 18 U.S.C. § 3142(e). See also United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) (when "risk of flight" is the basis for detention, the government must satisfy a preponderance of the evidence standard); United States v. Anderson, 382 F. Supp. 2d 13, 14 (D.D.C. 2005) (Bail Reform Act "provides for pretrial detention if the government establishes by a preponderance of the evidence that the defendant is likely to flee

---

1 *Counts One* through *Three* are crimes of violence, as defined by 18 U.S.C.§ 3156(a)(4). See United States v. Goba, 220 F.Supp.2d 182, 187 (W.D.N.Y. 2003) (conspiracy to provide material support to foreign terrorist organization constitutes a "crime of violence"). These offenses are also Federal crimes of terrorism, as defined by 18 U.S.C. § 2332b(g)(5)(B).

before trial if released and that no condition or combination of conditions will reasonably assure the appearance of the defendant as required") (citations omitted).

There is a rebuttable presumption of detention if there is probable cause to believe that the defendant committed: (1) "an offense under section 924(c) . . . of this title," or (2) "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed," 18 U.S.C. §§ 3142(e)(3)(B) and (C). In this case, there is a rebuttable presumption of detention for each of the four counts in the Indictment. *Count Four* charges the defendant with a violation of 18 U.S.C. § 924(c), and is thus subject to the presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(B). *Counts One* through *Three* are specifically listed as Federal crimes of terrorism in 18 U.S.C. § 2332b(g)(5)(B), and carry maximum sentences of 10 or more years.[2] The Indictment establishes the probable cause to believe that the defendant committed the charged offenses. Once a rebuttable presumption is created, it imposes a burden of production on the defendant to offer contrary credible evidence. See United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985). However, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)." United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008), *quoting* United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986). See also United States v. Ali, 793 F. Supp.2d 386, 387-88 (D.D.C. 2011); United States v. Bess, 678 F.Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by

2 Count One charges a violation of 18 U.S.C. § 2339A, which carries a maximum sentence of 15 years in prison; Count Two charges a violation of 18 U.S.C. § 2339B, which also carries a maximum sentence of 15 years in prison; and Count Three charges a violation of 18 U.S.C. § 2339D, which carries a sentence of ten years.

the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.”).

Section 3142(g) lists four factors that guide a court’s detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant’s release. 18 U.S.C. § 3142(g). At a detention hearing, the government may present evidence by way of a proffer. Smith, 79 F.3d at 1209-10. For the reasons that follow, the defendant cannot overcome the rebuttable presumption in favor of his pretrial detention.

## C. FACTORS SUPPORTING DETENTION

An analysis of the facts underlying this prosecution demonstrates that detention is appropriate.[3]

### (1) Nature and Circumstances of the Offense

The defendant is charged with four serious offenses. As discussed above, this case involves crimes of violence, as defined by 18 U.S.C. § 3156(a)(4) as well as Federal crimes of terrorism, as listed in 18 U.S.C. § 2332b(g)(5)(B). See 18 U.S.C. § 3142(g)(1). Reflecting the seriousness of this offense, the charged offenses carry a maximum sentence of seventy years in prison, and a potential mandatory minimum sentence of forty years. In light of the defendant’s

[3] The facts proffered in this memorandum are based on a combination of physical and documentary evidence, witness interviews, and expert analysis of the evidence in this case. The government is not attempting in this memorandum to proffer all facts known to it in this case or all evidence it possesses against the defendant. The government is merely providing facts that it believes will be more than sufficient to establish the need for the defendant’s detention.

age,[4] he effectively faces a life sentence. See United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2012) (prospect of life in prison creates a strong motive to flee); United States v. Geerts, 629 F.Supp. 830 (E.D.Pa. 1985) (defendant facing prospect of fifty years of incarceration was a risk of fight); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) (a consideration of the nature and circumstances of the offense also requires the court to weigh the possible penalty the defendant may face upon conviction).

As discussed further below, the defendant is a 56-year-old Turkish-Dutch national who conspired to provide material support to the IMU, a designated Foreign Terrorist Organization, for a period of more than two years. The IMU is a militant Islamic group, which was formed in the 1990s, with the stated purpose to overthrow the government of Uzbekistan. Since its inception, the IMU has been conducting military operations in Uzbekistan, Afghanistan and Pakistan. In approximately 2000, the IMU allied itself with the Taliban, a radical Sunni Islamist movement that governed Afghanistan from 1996 until late 2001. In 2001, a U.S.-led military coalition removed the Taliban from power in Afghanistan. A lawful government was thereafter elected by the people of Afghanistan. The IMU continues to exist in Afghanistan and Pakistan as an armed insurgency movement against the legitimate government of Afghanistan and its allies, including the armed forces of the United States. The IMU also allied itself with Al Qaeda, and more recently with the Islamic State of Iraq and the Levant ("ISIL"). Today, the IMU consists of hundreds of armed militants committed to establishing an Islamic state through the use of force.

During the charged conduct, the defendant was designated by the IMU leadership as a European-based fundraiser. In this capacity, the defendant raised funds for the IMU and recruited fighters for the IMU. He delivered funds directly to the IMU leadership in Pakistan and

4 The defendant's date of birth is June 28, 1959, and thus, at the time of the detention hearing, he will be 56 years of age.

facilitated the travel of recruits to IMU training camps in Pakistan, where the recruits received military training on various weapons, including Kalashnikov assault rifles, machine guns and rocket-propelled grenade launchers. The defendant also participated in these IMU military training exercises and created propaganda videos, which he used to raise funds for IMU's Islamist cause. The IMU used these funds and fighters to further its agenda by targeting the legitimate government of Afghanistan, and its allies – to include the Armed forces of the United States – with violence. The IMU also carried out numerous attacks against civilian targets.

In short, there is no condition or combination of conditions that will reasonably assure the defendant's appearance in Court and assure the safety of any person and the community. This inescapable conclusion is based on the defendant's demonstrated and continued interest and actions to harm American personnel and its allies and to provide material support to those specifically targeting the United States and its allies. See United States v. Medina Coronado, 588 F. Supp. 2d 3, 4 (D.D.C. 2008) (choosing to detain defendant due to nature of alleged crime, the history and characteristics of the defendant, and his extensive international ties, where defendant was charged with conspiracy to distribute cocaine and allegedly paid "taxes" to DOS foreign terrorist organization). It is therefore necessary for the safety of the public and to assure his appearance as required that the defendant be detained.

**(2) Weight of the Evidence Against the Defendant**

The evidence against the defendant is overwhelming. It includes physical evidence, witness evidence (to include expert and cooperating witnesses), as well as foreign evidence. The physical evidence includes documents and numerous video tapes that were obtained in May 2008 during the lawful execution of a search warrant at the defendant's residence in The Netherlands. The most significant items of documentary evidence that were seized include two letters from the

IMU leadership, one of which appointed the defendant as a European-based fundraiser for the IMU, the other which thanked him for providing the IMU with financial support and a communications device. The videos show, among other things: (1) The defendant meeting with the IMU leadership. During one such meeting, the IMU leadership thanked the defendant for providing the IMU with financial support. (2) The defendant is also seen with several of his IMU recruits receiving military-type training in Pakistan. The training, which is being given by the IMU, consists of weapons training on assault rifles, machine guns, and a rocket-propelled grenade launcher. The defendant is seen on the video in possession of these weapons. (3) The defendant is also seen participating in a threat sequence, which shows armed masked men making a series of threats of violence against Western nations, including the United States. (4) Additionally, one of the videos documents a meeting between the defendant and members of the Taliban. He can be seen distributing money and explaining that it is for the Taliban and Usama bin Laden. The Taliban and Usama bin Laden's Al Qaeda, have and continue to target Americans in Afghanistan and throughout the world. Their targets have included military personnel as well as and civilians. The physical evidence is supported by the anticipated witness testimony as well as foreign evidence.

**(3) <u>History and Characteristics of the Defendant</u>**

The history and characteristics of the defendant further indicate that he is a risk of flight and a danger to the community. He is a dual Turkish-Dutch citizen.[5] During the charged conspiracy, he was resident of The Netherlands and was known to travel internationally to various locations in Europe and Asia, including Turkey, Afghanistan, and the Federally Administrative

5 In addition to holding two passports, (i.e., a Dutch and a Turkish passports), the Dutch authorities reported that during their search of the defendant's residence in May 2008, they located evidence of forged visas for Bulgaria and Turkey, further evidencing the defendant as a risk of flight.

Tribal Area ("FATA") of Pakistan. His entire family and all known associates remain outside the United States.[6] He has no ties to the United States, nor has he ever been to the United States. See United States v. Khanu, 675 F.Supp.2d 69 (D.C. Cir. 2009) (finding "citizenship in Sierra Leone, [and defendant's] trip there prior to indictment" were facts favoring detention); United States v. Stanford, 722 F.Supp.2d 803 (S.D. Texas 2010) ("access to international network of contacts," and "primary residence in Antigua" demonstrated risk of flight); United States v. Vergara, 612 F. Supp.2d 36, 38 (D.D.C. 2009) (ordering that defendant accused of providing advanced communications networks for a terrorist organization is a flight risk and must remain detained given that she was not a United States citizen, had extensive foreign ties, and had communications expertise); United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993) ("travels abroad" and ties to foreign communities created incentive to flee); Goba, 240 F. Supp. 2d at 250-51 (finding that defendants who resided in the United States still posed a risk of flight given demonstrated ability to sustain themselves abroad for an extended period of time).

As discussed above, the defendant was a fundraiser and recruiter for the IMU, which is a designated Foreign Terrorist Organization. He was able to convince people throughout the world to donate money to the IMU's extremist cause. He was able to take this money and deliver it directly to the IMU leadership in the FATA. He was also able to convince people who were safely outside of Pakistan, to travel to Pakistan and fight for the IMU's extremists cause. His role in the IMU demonstrates a level of sophistication, influence and access that further suggest he is a danger to America.

In addition to the defendant posing a significant danger to others if not detained, the defendant also would have every incentive to flee the United States were he ever released. As

---

6 He is known to have family in The Netherlands and Bulgaria.

noted above, he contested his extradition. He is present in the United States solely to stand trial on the Indictment. Moreover, given the defendant's lack of ties to the United States and the serious charge facing him, the defendant has strong incentives to flee the jurisdiction. See Townsend, 897 F.2d at 996 (affirming pre-trial detention on the basis of flight risk where the defendants faced "severe penalties," "reside in foreign countries," and have "no significant ties to the United States").

**(4) Nature and Seriousness of the Danger Posed by the Defendant's Release**

The defendant poses a substantial danger, as detailed above, to United States nationals and the community in general. He has a long-standing history of providing material support for extremists who employ terrorism. In addition to providing funds and fighters for the IMU during the course of the charged conspiracy, he provided funds for the Taliban and Usama bin Laden. If the defendant were released he could continue to support the IMU or other like-minded terrorist groups. Additionally, the IMU essentially has a standing army consisting of hundreds of armed fighters dedicated to establishing Sharia law in the Afghanistan region. It has allied itself to other like-minded groups (including the Taliban, Al Qaeda, and more recently ISIL), all of whom have international reach and a history of targeting American interests. If he were released, he could seek their assistance in obstructing the pending case by employing the IMU or its allies to intimidate or target witnesses, (many of whom remain outside the United States), or to destroy evidence (some of which remains outside the United States). It is therefore necessary that the defendant must therefore be detained.

**D. CONCLUSION**

The Indictment and the additional factual proffer set forth above fully support the pretrial detention of the defendant under 18 U.S.C. § 3142. The defendant cannot overcome the rebuttable presumption in favor of pretrial detention. There is simply no condition or combination of conditions that will reasonably assure his appearance or the safety of the community.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. Bar Number 447-889

By:_____/s/_____________________
MICHAEL C. DILORENZO
(MD Bar #: 931214 0189)
JULIEANNE HIMELSTEIN
OPHER SHWEIKI
Assistant United States Attorneys
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7809
Michael.Dilorenzo@usdoj.gov